**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

REBECCA L. GONZALES, )
)
Plaintiff, )
)
v. ) Case No. 13-CV-86-GKF-TLW
)
J.C. PENNEY CORPORATION, INC., )
a Foreign for Profit Business Corporation, )
)
Defendant. )

**OPINION AND ORDER**

Before the court is the Motion to Compel Arbitration and to Dismiss or, in the Alternative, Stay All Proceedings [Dkt. ##11-12] filed by defendant J.C. Penney Corporation, Inc. ("JCP"). Plaintiff Rebecca L. Gonzales ("Gonzales") opposes the motion.

Gonzales, a former JCP customer service representative, sued JCP in Tulsa County District Court, asserting claims of wrongful discharge in violation of 85 O.S. § 341, negligent hiring, supervision and retention and intentional infliction of emotional distress. [Dkt. #2-1, Petition]. JCP removed the case to federal court based on diversity of citizenship [Dkt. #2] and filed the instant motion, asserting Gonzales, at the commencement of her employment, signed a binding arbitration agreement ("Arbitration Agreement") that requires arbitration of her claims in this lawsuit.

The Arbitration Agreement states, in pertinent part:

> [JCPenney] and I voluntarily agree to resolve disputes arising from, related to, or asserted after the termination of my employment with JCPenney through mandatory binding arbitration under the JCPenney Rules of Employment Arbitration. JCPenney and I voluntarily waive the right to resolve these disputes in courts.

> I acknowledge that I was given the opportunity to review the Rules and consult with an attorney prior to signing this Agreement. I understand that I will, however, be bound by this Agreement and the Rules once I sign electronically, regardless of whether I have reviewed the Rules, or consulted with an attorney, prior to signing. I hereby agree to arbitrate disputes covered by and pursuant to the JCPenney Rules of Employment Arbitration.
>
> Check the box below and click on the Accept button below to electronically sign this form. By signing this form, you agree to this Binding Mandatory Arbitration Agreement.

[Dkt. #11, Ex. A.4]. The Arbitration Agreement bears the electronic signatures of Gonzales and JCP, and is dated 07/14/2010. [*Id.*].[1]

Under Rule 3.B of the JCP Rules of Employment Arbitration, all claims related to retaliation for exercising protected rights, wrongful termination and/or breach of common law obligations are subject to arbitration. [Dkt. #11, Ex. A.3]. Rule 21.A. permits JCP to "amend any Rule to clarify it or correct typographical errors." [*Id.*].

Gonzales contends she never signed the Arbitration Agreement. Further, she argues adequate consideration is lacking because JCP had an "unfettered right" to amend the Arbitration Agreement.

## II. General Law

Agreements containing arbitration provisions are valid, enforceable and irrevocable under the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute that is the subject of the litigation. *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995); 9 U.S.C. § 3.

---

[1] Under Oklahoma's Uniform Electronic Transactions Act ("UETA"), 12A O.S. § 15-101, *et seq.*, if the law requires a signature, an electronic signature satisfies the law. 12A O.S. § 15-107(d). *See also Buckhalter v. J.C. Penney Corporation, Inc.*, No. 3:11-cv-752-CWR-FKB, 2012 WL 4468455 (S.D. Miss. Sept. 25, 2012) (recognizing validity of employee's electronic signature of arbitration agreement under UETA).

Arbitration agreements in employment contracts are generally enforceable. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). Agreements that require arbitration of statutory claims are also generally enforceable. *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

The FAA establishes a federal policy favoring arbitration, and courts must vigorously enforce arbitration clauses. *Id.* As a corollary to this policy, it is a well-established rule that "all doubts must be resolved in favor of arbitrability." *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cor. 1998). And while state law principles of contract formation apply, the language of the parties' contract must be interpreted in light of the strong federal policy in favor of arbitration. *See Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 13 F.3d 330, 334 (10th Cir. 1993) ("[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration") (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-75 (1989).

In considering a motion to compel arbitration, the court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the subject matter of the dispute is covered by the arbitration agreement. *Pierce v. Kellogg, Brown & Root, Inc.*, 245 F.Supp.2d 1212, 1215-16 (E.D. Okla. 2003) (citing *Coors*, 51 F.3d at 1515-16).

**III. Analysis**

Under Oklahoma law, "[a] contract is an agreement to do or not to do a certain thing." 15 O.S. § 1. The essential elements of a contract are (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) sufficient cause or consideration. 15 O.S. § 2. JCP has presented evidence of an arbitration agreement bearing the signatures of Gonzales and JCP. Further, there

is no dispute that the agreement covers the claims raised in this lawsuit. However, Gonzales contends she did *not* sign the agreement, and there was no consideration for it.

**A. Authenticity of Signature**

JCP has submitted affidavits of Bret J. Romero, JCP's Director of Human Resources, and Kelley Perry, an Application Analyst for JCP. [Dkt. #11, Ex. A, Romero Affid.; Dkt. #17, Ex. 1, Perry Affid.]. The affidavits establish:

- Gonzales was employed as a customer service associate at the JCP in Woodland Hills Mall in Tulsa from July 12, 2010 through April 12, 2012. [Romero Affid., ¶4].

- Every newly-hired employee of JCP in Oklahoma is required to complete a New Hire Package. To complete the package, each employee must enter their Social Security Number into an Associate Kiosk, then is required to formally accept an offer of employment with JCP and complete electronic forms containing his or her personal data. [*Id.*, ¶6].

- After entering their personal data into the Associate Kiosk, each employee is assigned a unique Employee Identification Number which is used to identify them throughout their employment with JCP. Each newly-hired employee is also required to create a password to enable them to access the Associate Kiosk, which employees use to clock in and out each day and which JCP uses to convey information to employees. [*Id.*, ¶7].

- Once an employee obtains an Employee Identification Number, they are required to complete the remainder of the New Hire Package, which they do electronically. This includes completing an I-9 and W-4, providing emergency contact information and enrolling in direct deposit, if they so choose. Employees are also provided with the JCP policies and procedures applicable to their employment, and they must electronically acknowledge receipt of them. All employees are presented with the Arbitration Agreement, which they are required to review and accept electronically by clicking the "I Accept" box on the Associate Kiosk screen. Upon completion of the New Hire Package, the store's Training Supervisors are required to print the forms and transmit them with all support documentation to the Salt Lake Shared Service Center Imaging Department in Salt Lake City, Utah, where they are maintained in the employee's personnel file. [*Id.*, ¶8].

- As part of JCP's "on-boarding" new hire process, Gonzales was assigned a unique Employee Identification Number on July 14, 2010. The process required that Gonzales create her own unique password which, combined with her Employee Identification Number, gave her access to the JCP Associate Kiosk, where the on-boarding process takes place. Gonzales created her unique password on July 14, 2010. JCP does not have and never had access to her password. As a result, JCP could not access Gonzales'

new hire application and did not have access to her personal electronic account with JCP. [Perry Affid., ¶2].

- While in the on-boarding new hire process, Gonzales was required to sequentially complete a task list, which included, among other things, completing a Federal W-4, electronically signing and agreeing to the Binding Arbitration Agreement, providing emergency contacts, and completing the universal acknowledgments, parking acknowledgment, dress code acknowledgment, and attendance acknowledgment. Each task on the task list must have been completed before the on-boarding new hire process was complete and Gonzales was allowed to work. JCP's records indicate that Gonzales completed each of the tasks, including electronically signing the Binding Arbitration Agreement, on July 14, 2010. [*Id.,* ¶3].

In her response, Gonzales submitted an affidavit denying that she signed the Agreement and stating that once she was hired, she remembered filling out paper work for a 401K, tax information, contact information, relative contact information and "medical stuff," but not the Agreement. [Dkt. #15, Ex. A, Gonzales Affid., ¶¶4, 7]. She stated that she was never given a copy of the Agreement until her attorney showed it to her in this case. [*Id.,* ¶9]. She stated, "When I worked at J.C. Penny other cashiers, supervisors and managers had access to my employee number and social security number, if they needed it." [*Id.,* ¶8]. In a supplemental affidavit subsequently filed with leave of court, Gonzales further stated:

> Here's how I got my J.C. Penny employee I.D. number. On my first day of work a manager walked me to a device that looked like a Time Clock. It was down stairs, mounted on a wall outside the break room. The Time Clock had a keypad, also on the wall. It was not a computer at a desk or kiosk. I was standing up to operate it and told to enter my name and Social Security number on it, which I did, and a number came up that was to be my employee I.D. number. I had to write it down to remember it. The manager was standing next to me and could see the employee I.D. number.
>
> When entering my name and Social Security number into the Time Clock, I was standing up and there wasn't any other information on it or for me to read or go through. I just put in my basic information and it gave me, and the manager standing next to me, my I.D. number that I needed to use while at J.C. Penny.

[Dkt. #24, Ex. A, Gonzales Affid., ¶¶3-4].

The essence of Gonzales' argument is that since she does not to remember signing the agreement, and her manager was standing next to her when she wrote down her employee identification number, then someone else must have electronically signed the arbitration agreement on her behalf. The evidence before this court does not support such a conclusion. Gonzales admits going through the new hire process, including electronically filling out other forms at a terminal.[2] The sworn statements of the JCP affiants establish that the new hire process was an online electronic process that required all paperwork be signed sequentially; the employee was required to input both the employee identification number *and* a password known only to the employee in order to do so; and JCP has records of all paperwork completed during the process, including the arbitration agreement with Gonzales' electronic signature. Further, Gonzales has not stated that she has proof that someone else signed the agreement, nor has she identified who that person was.

The court concludes that Gonzales has not raised a genuine issue as to whether she signed the arbitration agreement.

**B. Sufficiency of Consideration**

Rule 21 of the JCP Rules of Employment Arbitration states:

> A. JCPenney may amend any Rule to clarify it or correct typographical errors.
>
> B. If, in the course of a Case, a Rule or subpart thereof is deemed unenforceable by a court or arbitrator, it will be considered stricken from these Rules insofar as that particular Case is concerned. JCPenney may thereafter amend these Rules to delete any such Rule or subpart, thus preventing its application to future Cases.
>
> C. Amendments only apply to Cases commenced 90 days after publication of the amendment.

[2] Although Gonzales denies the terminal was a "kiosk," her affidavit establishes that she completed new hire forms electronically on a device she described as a "Time Clock [with] a keypad." [Dkt. #24, Ex. A, Gonzales Affid., ¶3].

[Dkt. #11, Ex. A.4, p. 9]. Gonzales asserts, based on this language, that the Arbitration Agreement lacks sufficient consideration because it gives JCP an "unfettered right" to amend the agreement.

In *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002), the Tenth Circuit held that "an arbitration agreement allowing one party the *unfettered* right to alter the arbitration's existence or its scope is illusory." (emphasis added). There, the signature page of employee handbook containing an arbitration agreement reserving to the employer the right to amend, supplement, or revise everything in the handbook with the exception of employees' at-will status. *Id.* at 1217.

However, in *Hardin v. First Cash Financial Services, Inc.*, 465 F.3d 470 (10th Cir. 2006), the court—applying Oklahoma law regarding contract formation—held that where the right to modify the arbitration agreement is restricted, the agreement is not illusory. In *Hardin*, the dispute resolution agreement ("DRA") stated the employer "retains the right to terminate the, and/or to modify or discontinue the Dispute Resolution Program ("DRP")." *Id.* at 478. It also provided, though, that "no amendment shall apply to any claims, disputes, or controversies of which the Company had actual notice on the date of the amendment" and termination of the agreement and/or DRP would "not be effective until 10 days after reasonable notice of termination is given to Employee or as to claims, disputes, or controversies which arose prior to the date of termination." *Id.*

In finding the modification provision did not render the arbitration agreement illusory, the court stated, "Oklahoma law suggests that reasonable modification provisions are permissible," and it concluded "under Oklahoma law . . . an arbitration agreement allowing a defendant company the unilateral right to modify or terminate the agreement is not illusory so

long as reasonable restrictions are placed on the right." *Id.* at 479 (citing *Wilson v. Gifford-Hill & Co., Inc.*, 570 P.2d 624, 626 (Okla. Civ. App.1977); *Pierce v. Kellogg, Brown & Root, Inc.*, 245 F.Supp.2d 1212, 1215 (E.D. Okla. 2003)).

Here, as in *Hardin*, the arbitration rules permit JCP to amend the rules. However, the right is not—as Gonzales asserts—"unfettered." First, an amendment may be made only to "clarify" the rule or "to correct typographical errors." Second, amendments apply only to cases commenced 90 days after publication of the amendment. Third, if, in the course of a case, a rule or subpart of a rule is deemed unenforceable by a court or arbitrator, it will be considered stricken from the rules insofar as that particular case is concerned; and JCP may thereafter amend the rules to delete any such rule or subpart.

The court concludes that Rule 21 contains reasonable restrictions upon JCP's right to amend the Arbitration Agreement. Therefore, the agreement is not illusory. *See Hardin*, 465 F.3d at 479. Additionally, since both JCP and Gonzales agreed to submit any employment-related claims to binding arbitration, as provided by the Rules of Arbitration, their mutual promises to arbitrate claims constitute adequate consideration to support the arbitration agreement. *See Thompson v. Bar-S Foods, Co.*, 174 P.3d 567 (Okla. 2007) (agreement to arbitrate must apply equally to both parties to provide sufficient consideration). Further, courts have held that an agreement to arbitrate as a condition of employment constitutes adequate consideration to support an arbitration agreement. *See, e.g., Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 Fed.Appx. 812, 819 (10th Cir. 2008) (unpublished) ("In the employment context, a reciprocal agreement to arbitrate can provide the requisite consideration so long as the employer does not retain the unilateral authority to terminate or modify the arbitration agreement once the employee's claim has accrued.")

**C. Dismissal/Stay**

JCP seeks dismissal of this action. Alternatively, it asks the court to stay the case pending arbitration.

The FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements. *See* 9 U.S.C. § 3. Some circuits condone dismissal of a case where all issues presented in the lawsuit are arbitrable. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001); *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999). However, the Tenth Circuit has rejected this position, stating "Section 3 of the Federal Arbitration Act contemplates continuing supervision by the district court to ensure that arbitration proceedings are conducted within a reasonable period of time, thus preventing any impairment of the plaintiffs' rights to seek relief." *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538-9 (10th Cir. 1987). *See also Gratzer v.Yellow Corp.*, 316 F.Supp.2d 1099, 1106-07 (D. Kan. 2004).

Therefore, JCP's request for dismissal of this action is denied. Its alternative motion for stay is granted.

**III. Conclusion**

For the foregoing reasons, JCP's Motion to Compel Arbitration [Dkt. ##11] is granted. JCP's Motion to Dismiss and alternative Motion to Stay [Dkt. #12] is denied with respect to the request for dismissal and granted with respect to the request for stay. This action is stayed pending arbitration of the claims asserted by plaintiff in her complaint.[3]

[3] JCP filed an Application for Hearing on Motion to Compel. [Dkt. #25]. The court concludes a hearing is unnecessary, as the evidence submitted by the parties raises no genuine dispute about whether plaintiff's claims are subject to arbitration. Therefore, the application for hearing is denied.

ENTERED this 29th day of April, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT